IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |  |
|---|---|---|
| ANGELO LAMONT JACKSON, | * | |
| Plaintiff, | * | |
| v. | * | Case No.: 8:19-cv-00564-PWG |
| MICHAEL CARIN, OFFICER, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Angelo Lamont Jackson ("Jackson") filed this lawsuit against Detective Michael Carin of the Montgomery County Police Department, claiming violations of the Fourth Amendment to the U.S. Constitution, 42 U.S.C. § 1983, Articles 24 and 26 of the Maryland Declaration of Rights, and asserting a Maryland State claim for gross negligence in connection with Detective Carin's alleged application for an arrest warrant for Jackson without probable cause. Compl., ECF No 1. Detective Carin has filed a motion to dismiss, contending that the Complaint does not state any claims upon which relief can be granted because the warrant was based on probable cause, and if not, he is entitled to qualified immunity because his actions were objectively reasonable. Mot. to Dismiss, ECF No. 11. For the reasons that follow, I will deny the motion to dismiss.

**FACTUAL BACKGROUND**

On January 10, 2017, two men were stabbed to death during a conflict at the Westfield Wheaton Mall in Wheaton, Maryland.[1] Compl. ¶ 9. Part of the conflict was captured on the Mall's security surveillance video system. The footage shows one man (the "assailant") who is black, has a dark complexion, appears six feet tall, is in his twenties, and is physically strong. *Id.* ¶¶ 13-21. This man got into an altercation with four other men, two of whom he stabbed. *Id.* ¶¶ 27, 31. The man then absconded. *Id.* ¶ 29.

At the time of the murders, Jackson was in Germantown, Maryland, about forty minutes away from Wheaton, Maryland. *Id.* ¶ 32. Had Detective Carin checked, Jackson's location would have been corroborated by multiple witnesses and cell phone records. *Id.* ¶¶ 34-35.

Detective Carin was assigned as the lead investigator for the two murders. *Id.* ¶ 36. As part of his investigation, he obtained the surveillance footage and from which he captured a still picture of the assailant's face. *Id.* ¶ 46. In an effort to identify the assailant, the picture was circulated to the public and the surveillance video was circulated to other Montgomery County Police officers. *Id.* ¶¶ 46, 48. At least one officer communicated to Detective Carin that the assailant "resembled" Jackson, but "did not make a confirmed positive identification." *Id.* ¶¶ 49, 51. And at least one other officer disagreed that Jackson resembled the assailant. *Id.* ¶ 54. No person from the public identified Jackson as the man in the still. *Id.* ¶ 47.

Detective Carin obtained a photograph of Jackson for comparison purposes. *Id.* ¶ 55. The photograph of Jackson depicts a black man, who appears younger than the assailant, with a slighter build, a significantly smaller nose, lighter skin, and is shorter than the assailant. *Id.* ¶¶ 56-58.

---

[1] The facts of the case are taken from the Complaint (ECF No. 1) and are assumed to be true for purposes of ruling on Defendants' motion to dismiss. *See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012).

"[W]hen all the differences were taken together, it was, or should have been apparent to Carin that the picture of [Jackson] did not match the perpetrator on the surveillance video." *Id.* ¶ 59.

Lastly, part of Detective Carin's investigation before writing and affirming under oath the accuracy of the facts supporting the Application for Statement of Charges ("Application") was interviewing eyewitnesses to the incident, two of whom were the two survivors of the attack. *Id.* ¶¶ 40-41. The two eyewitnesses were never shown the picture of Jackson or an in-person lineup of Jackson for identification purposes, and neither of them identified Jackson as the perpetrator. *Id.* ¶¶ 43-45.

Detective Carin wrote in the Application the following concerning Jackson:

> The suspect was identified by Montgomery County Police officers who have had prior law enforcement contacts with the suspect. The officers identified the suspect as Angelo Lamont Jackson (B/M; DOB 03/26/1999). Investigators obtained a photograph of Angelo Lamont Jackson. That photograph matched the suspect depicted in the video.

Appl. For Statement of Charges ("Appl.") 2, ECF No. 1-4. Neither the still from the surveillance video nor the picture of Jackson was included in the Application. Compl. ¶ 61.

A Commissioner approved the arrest warrant and on Wednesday, January 11, 2017, Detective Carin arrested Jackson. *Id.* ¶ 80. Jackson communicated to Detective Carin that he did not commit any crimes at the Wheaton Mall, however Detective Carin charged Jackson with two counts of first-degree murder. *Id.* at 83. After further investigation, Detective Carin "obtained cell phone records, witness statements confirming [Jackson]'s alibi, and other exculpatory evidence confirming that [Jackson] was not the suspect depicted on the video." *Id.* ¶ 91. Detective Carin did not communicate this exculpatory information to the Prosecutor, and as a result, Jackson was detained for approximately sixty-five days. *Id.* ¶¶ 93-94. A grand jury returned an indictment

3

against Jackson for murder.² Def.'s Mem. 3 n.1, ECF No. 11-1. In March 2017, prosecutors dropped all charges against Jackson, because there was insufficient evidence to proceed "in part based on the determination that the suspect shown on the surveillance video was not [Jackson].

Jackson filed this lawsuit against Detective Carin asserting five claims: (1) violation of the Fourth Amendment to the U.S. Constitution, i.e. unlawful pretrial detention, (2) violation of 42 U.S.C. § 1983 based on a violation of the Fourth Amendment, i.e. unlawful detention, (3) violation of 42 U.S.C. § 1983 based on a violation of the Fourth Amendment, i.e. malicious prosecution, (4) violations of Articles 24 and 26 of the Maryland Declaration of Rights, and (5) gross negligence. *See* Compl. at 11-18.

Defendants seek to dismiss the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Mot. to Dismiss 1. The parties have fully briefed their arguments. *See* ECF Nos. 11, 12, 13. No hearing is necessary. *See* Loc. R. 105.6. Because Jackson has alleged facts sufficient to allow a reasonable trier of fact to find the warrant for his arrest was not based on probable cause, and that Detective Carin's actions were not in accordance with clearly established law, the motion to dismiss is denied.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint if it fails "to state a claim upon which relief can be granted." A motion pursuant to this rule "tests the sufficiency of a complaint; it does not, however, 'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir.

---

² This fact is not included in Jackson's complaint, however, as Fed. R. Evid. 201 allows, I take judicial notice of the fact that on January 27, 2017, a grand jury indicted Jackson for murder. *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that 'the most frequent use of judicial notice is in noticing the contents of court records.'") (quoting 21 C. Wright & K. Graham, Federal Practice and Procedure: Evidence § 5106 at 505 (1977)).

2016) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). To overcome the motion, the "complaint 'must contain sufficient facts to state a claim that is plausible on its face.'" *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)). The court, in reviewing the motion, "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'" *Kensington Volunteer Fire Dep't*, 684 F.3d at 467 (quoting *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). Additionally, "[a] court passing on a motion to dismiss may consider attachments to a complaint or the motion to dismiss if 'integral to the complaint and authentic.'" *Leichling v. Honeywell Int'l, Inc.*, 842 F.3d 848, 851 (4th Cir. 2016).

## DISCUSSION

Detective Carin argues that Jackson's complaint should be dismissed for failure to state a claim upon which relief can be granted for four reasons: (1) Jackson did not suffer a violation of his Fourth Amendment right against unlawful detention because his arrest was based on probable cause, (2) even if the warrant was not based on probable cause, Detective Carin is nevertheless entitled to qualified immunity, (3) because the federal claims should be dismissed, so should the state constitutional claims, and (4) Jackson did not allege sufficient factual support to sustain a gross negligence claim. *See* Mot. to Dismiss 1-2.

Detective Carin argues that Jackson's first three claims center around one issue: whether he had probable cause to seek an arrest warrant for Jackson. Def.'s Mem. 6. This is because Jackson's first count is for a violation of his Fourth Amendment right against unlawful detention and the second and third counts are for violations of 42 U.S.C. § 1983, based on violations of the Fourth Amendment. *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (holding that when a plaintiff

asserts a claim pursuant to 42 U.S.C. § 1983 and an officer asserts qualified immunity, the court must determine whether "the facts alleged show the officer's conduct violated a constitutional right," and "whether the right asserted was clearly established"); *see generally Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (eliminating the requirement that a court must answer these questions in a particular order). Therefore, the first three counts all rely on establishing a violation of the Fourth Amendment to the U.S. Constitution, and more specifically, establishing that the arrest warrant for Jackson was not supported by probable cause. *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911 (2017) (holding that pretrial detention violates the Fourth Amendment when detention is unsupported by probable cause); *Durham v. Horner*, 690 F.3d 183, 189 (4th Cir. 2012) (holding that to establish a constitutional violation based on malicious prosecution, a plaintiff must show that s/he was seized pursuant to a legal process unsupported by probable cause). I agree with Detective Carin that the viability of the first three counts turns on whether Jackson's arrest was based on probable cause, then on whether Detective Carin is entitled to qualified immunity, and lastly whether Jackson's state claims survive.

**Jackson has alleged facts from which a reasonable trier of fact could find his arrest was unsupported by probable cause**

Probable cause for an arrest "exists where the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Dunway v. New York*, 442 U.S. 200, 208 n.9 (1979) (citations, quotation marks, and original brackets omitted). It has long been settled by the Supreme Court that, ordinarily, "an indictment, 'fair upon its face,' returned by a 'properly constituted grand jury,' conclusively determines the existence of probable cause." *Durham v. Horner*, 690 F.3d 183, 189

(4th Cir. 2012) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 117 n.3 (1975)). However, "a grand jury's decision to indict will not shield a police officer who deliberately supplied misleading information that influenced the decision." *Id.* (citations, quotation marks, and original brackets omitted). Therefore, because Jackson was indicted, he must—and does—allege that Detective Carin, in applying for the warrant, "deliberately or with a reckless disregard for the truth made material false statements in his affidavit" or "omitted from that affidavit material facts with the intent to make, or with reckless disregard of whether they thereby made, the affidavit misleading." *Miller v. Prince George's Cty., MD*, 475 F.3d 621, 627 (4th Cir. 2001) (citations and quotation marks omitted).

Reckless disregard with respect to false statements is established "'when viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.'" *Id.* (quoting *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000)). Reckless disregard for omissions is established by evidence that "a police officer 'failed to inform the judicial officer of facts he knew would negate probable cause.'" *Id.* (quoting *Beauchamp v. City of Noblesville, Inc.*, 320 F.3d 733, 743 (7th Cir. 2003)). The false statements or omissions must be material, in that if the facts that were omitted were included and if the facts that were false were corrected, the warrant affidavit would not establish probable cause. *Id.* at 628.

Jackson alleges that Detective Carin intentionally, or with reckless disregard, made the following false statements in the Application: (1) Jackson "matched the suspect depicted in the video," (2) officers had positively "identified the suspect as Angelo Lamont Jackson." Compl. ¶¶ 110, 113; Appl. 2. Jackson alleges that Detective Carin intentionally, or with reckless disregard, omitted the fact that other officers disagreed that Jackson resembled the suspect in the video, and

7

omitted the photo of Jackson and the still from the surveillance video. Compl. ¶¶ 112, 114. Jackson alleges these false statements and omissions were material because they "caused the commissioner to approve the request for an arrest warrant of [Jackson]." *Id.* ¶ 117. Detective Carin argues that his use of the word "identified" instead of "resembled" is an issue of semantics, Reply 3, ECF No. 13, and that his statement that Jackson "matched" the suspect in the video was not made with reckless disregard for its falsity because "[Jackson] has no factual evidence that Detective Carin *knew* that [Jackson] was not the person depicted in the video." *Id.* at 2.

But at this stage of the proceedings, Jackson is not required to "prove" anything, merely to allege sufficient facts to state a plausible claim. And he has alleged facts sufficient to allow a reasonable trier of fact to find that he intentionally or recklessly made materially false assertions or material omissions in his affidavit, without which, it would not support probable cause. In *McPhearson v. Anderson*, the United States District Court for the Eastern District of Virginia denied an officer's motion to dismiss for failure to state a claim because the plaintiff had sufficiently alleged an officer provided materially false information leading to the plaintiff's arrest. 873 F. Supp. 2d 753, 758 (E.D. Va. 2016). The officer had incorrectly provided the plaintiff's (Antonio Demond McPhearson's) information on a warrant, instead of the alleged assailant's (Antonio Roshawn McPherson's) information, leading to the arrest of the plaintiff. *Id.* at 757. The court manifested its skepticism that the defendant officer "did anything more than make an 'innocent mistake' confusing two nearly identical names," but because the plaintiff alleged that the officer "procured the prosecution of Plaintiff falsely. . . and with full knowledge that the charge was without any reasonable or probable cause whatsoever," the court had to assume the pleaded facts as true and deny the motion to dismiss. *Id.* The same is true here. As pleaded, "Detective Carin acted with reckless disregard when he wrote that [Jackson] 'matched the suspect in the

video,'" and "recklessly misrepresented and overexaggerated [sic] the extent to which MCDEP officers identified [Jackson]." Compl. ¶¶ 110, 113. Furthermore, Jackson alleges that Detective Carin's "failure to provide material exculpatory information [was] made with reckless disregard." *Id.* ¶ 115. And that "it was, or should have been apparent to Carin that the picture of [Jackson] did not match the perpetrator on the surveillance video." *Id.* ¶ 59. A reasonable fact finder could find that an Application that: included the still, a photo of Jackson that Detective Carin knew or should have known did not match the still, the fact that officers did not identify Jackson but merely spoke to a resemblance, and the fact that some officers disagreed about a resemblance, lacked probable cause.

Jackson also claims that Detective Carin's failure to investigate contributes to the likelihood of a reasonable fact finder concluding the warrant was not issued upon probable cause, and I agree. "A police officer's failure to pursue potentially exculpatory evidence [is] not in itself sufficient to negate probable cause." *Torchinsky v. Siwinski*, 942 F.2d 257, 264 (4th Cir. 1991). However, the Fourth Circuit has held that evidence of an officer's failure to investigate, amongst other indicia of a lack of probable cause, formed a sufficient basis to sustain a jury verdict that an arrest was not based on probable cause. *Clipper v. Takoma Park, MD*, 876 F.2d 17, 19-20 (4th Cir. 1989).

The facts of *Clipper* are informative. In that case, two armed men held up a bank, and although Takoma Park police officers were able to capture one of the men and the getaway driver, one man escaped. *Id.* at 18. As part of the investigation, officers obtained a detailed description of the man from the bank manager. *Id.* Police officers determined the getaway car was registered to the plaintiff, Clipper, leading police to bring him in for questioning where he told police that he had been home the afternoon of the robbery and that this could be corroborated by two neighbors.

9

*Id.* at 18-19. Officer Starkey thought Clipper "roughly matched the description of the escaped robber" but the only officer who saw the robber, Officer Wortman, was "unable to make a positive identification." *Id.* Officer Starkey took photographs of Clipper and brought them to the bank for identification where the bank manager and another employee identified Clipper as the robber. *Id.* at 19. Officer Starkey obtained a warrant and arrested Clipper, but charges were dropped when the bank manager stated Clipper was not the robber. A jury found that Clipper was arrested without probable cause and the defendant appealed. The Fourth Circuit affirmed because "there was ample evidence" supported the verdict because: (1) no officer pursued evidence they could have gotten from Clipper's neighbors that would have corroborated his alibi, (2) Officer Wortman could only say Clipper looked like the robber, but "he was not sure that Clipper was the man," and (3) Clipper contends that stills from the bank surveillance cameras "would have conclusively established that he was not the missing robber." *Id.*

Likewise, Detective Carin's failure to investigate is relevant to the probable cause determination here. Jackson alleges that Detective Carin failed to show the only two eyewitnesses a photo of Jackson for identification and that Detective Carin could have learned of Jackson's alibi had he interviewed Jackson before the arrest because multiple individuals and information on his cell phone would have corroborated his location at the time of the incident.[3] Just as in *Clipper*, the lack of investigation, coupled with statements from officers that did not amount to a positive identification, and allegations that the photograph of the arrestee and the perpetrator contained so

---

[3] *Clipper* is distinguishable in that Jackson does not allege that he made Detective Carin aware of the names of people who could have corroborated his alibi. The Fourth Circuit has since characterized the actions of the officer in *Clipper* as having ignored "readily available exculpatory evidence of which he has been made aware." *Torchinsky*, 942 F.2d at 264. However, an officer's alleged willful blindness (such as Detective Carin's) as to the availability of exculpatory evidence, is a factor that is relevant to the probable cause determination.

10

many differences that it "was or should have been apparent to Carin" that they did not match, leads me to conclude that Jackson has alleged facts from which a reasonable fact finder may find the arrest was not supported by probable cause.

**Jackson has alleged facts from which a reasonable trier of fact may conclude that Carin is not entitled to qualified immunity**

Qualified immunity shields police officers and other government officials from liability for civil damages under § 1983 "when they perform their duties reasonably." *Wilson v. Prince George's Cty.*, 893 F.3d 213, 219 (4th Cir. 2018) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). That is to say, it "gives government officials breathing room to make reasonable but mistaken judgments." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).

To assess whether an officer is entitled to qualified immunity, courts must make two determinations: (1) "whether the facts alleged or shown, taken in the light most favorable to the plaintiff, establish that the officer's conduct violated the plaintiff's constitutional right," and (2) "whether the right at issue was 'clearly established' at the time of the officer's conduct." *Wilson*, 893 F.3d at 219 (quoting *Saucier*, 533 U.S. at 201). Because I have determined that according to the facts alleged, a reasonable trier of fact may find that probable cause did not exist to arrest Jackson, Detective Carin is only entitled to qualified immunity if Jackson's right was not clearly established.

Courts conduct this inquiry "by determining whether a reasonable officer would have understood that his conduct violated the asserted right." *Miller*, 475 F.3d at 627. The "salient question is whether the state of the law at the time gives officials fair warning that their conduct is unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). "Although earlier cases involving

'fundamentally similar' facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding." *Id.* at 741.

"[T]he Supreme Court has long held that a police officer violates the Fourth Amendment if, in order to obtain a warrant, he deliberately or 'with reckless disregard for the truth' makes material false statements or omits material facts." *Miller*, 475 F.3d at 631 (quoting *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)). As explained above, according to the facts alleged, a reasonable trier of fact may find that Detective Carin deliberately, or with reckless disregard for the truth, made material misrepresentations and omissions in the Application for Jackson's arrest warrant. He is therefore not entitled to qualified immunity. *Smith v. Reddy*, 101 F.3d 351, 355 (4th Cir. 1996) ("[A] reasonable officer cannot believe a warrant is supported by probable cause if the magistrate is misled by statements that the officer knows or should know are false.").[4]

**Jackson's claims under the Maryland State Constitution survive**

Jackson's fourth count asserts that his rights under the Articles 24 and 26 of the Maryland Declaration of Rights were violated based on his claims asserting the violation of his Fourth Amendment rights.[5] Compl. ¶¶ 153-54.

---

[4] Detective Carin argues that because the Fourth Circuit held in *Torchinsky* that an officer was entitled to qualified immunity because "it is difficult to imagine how a police officer could obtain better evidence of probable cause than an identification by name of assailants provided by a victim," he is entitled to qualified immunity as well. 942 F.2d at 262. This argument fails for two reasons: (1) *Torchinsky* is plainly distinguishable from the facts alleged here, since no victim identified Jackson as the assailant, and (2) the *Torchinsky* court did not find that the plaintiff alleged facts sufficient to allow a reasonable fact finder to conclude that the officer intentionally or recklessly provided misleading information on the warrant application, as Jackson does here; the warrant in *Torchinsky* was supported by probable cause.

[5] In Maryland, state constitutional claims, such as these, are not defeated by an assertion of qualified immunity. *See Robles*, 302 F.3d at 273; *Williams v. Prince George's Cty.*, 685 A.2d 884, 894 (Md. Ct. Spec. App. 1996).

Article 26 provides in relevant part: "That all warrants, without oath or affirmation, . . . to seize any person or property, are grievous and oppressive. . . ." Md. Const. Decl. of Rts. art. 26. This article is understood to be *in pari materia* with the Fourth Amendment to the U.S. Constitution. *See Wilson*, 893 F.3d at 224; *Henry v. Purnell*, 652 F.3d 524, 536 (4th Cir. 2011); *Henderson v. State*, 597 A.2d 486, 488 (Md. Ct. Spec. App. 1991). I have already explained why I am declining to dismiss Jackson's Fourth Amendment claim under § 1983, and for those same reasons, I decline to dismiss the Article 26 claim.

Article 24 provides: "That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges . . . or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land." Md. Const. Decl. of Rts. art. 24. This provision is "generally interpreted as being synonymous" with the Due Process Clause of the Fourteenth Amendment. *Branch v. McGeeney*, 718 A.2d 631, 642 (Md. Ct. Spec. App. 1998); *see also Robles v. Prince George's Cty.,* 302 F.3d 262, 272 (4th Cir. 2002). Because Jackson's Fourth Amendment claim, and therefore his claim under Article 26, is not dismissed, neither is his Fourteenth Amendment claim, and therefore his claim under Article 24. *Mapp v. Ohio*, 367 U.S. 643, 655 (1961) (holding the Fourth Amendment's right against unreasonable searches and seizures is enforceable against the States through the Due Process Clause of the Fourteenth Amendment).

**Jackson has alleged sufficient facts that would allow a fact finder to conclude that Detective Carin was grossly negligent**

Jackson's last count alleges that Detective Carin acted with gross negligence. Detective Carin argues this claim should be dismissed because Jackson "alleges—without factual substantiation—that Detective Carin acted with wanton negligence in his investigation." Def.'s Mem. 24. Detective Carin's motion to dismiss this count is also denied.

Maryland courts define gross negligence as a "reckless disregard of the consequences as affecting the life or property of another." *Torbit v. Baltimore City Police Dep't*, 153 A.3d 847, 856 (Md. Ct. Sp. App. 2017); *see also Shoemaker v. Smith*, 725 A.2d 549, 559 (Md. 1999) (likening gross negligence to "reckless or wanton misconduct"). Because above I found that Jackson alleged facts from which a reasonable trier of fact may find that Detective Carin acted either intentionally or with a reckless disregard in causing a Commissioner to issue an arrest warrant for Jackson not based on probable cause, by implication, Jackson has also alleged facts from which a reasonable trier of fact may find he was grossly negligent.

## CONCLUSION

In sum, Jackson has alleged facts sufficient to allow a reasonable fact finder to conclude that the Application Detective Carin executed was not based on probable cause, and that it was clearly established at the time of Detective Carin's Application that a police officer cannot lawfully make intentionally or recklessly false material statements or omission to obtain a warrant. Therefore, at this stage, all of Jackson's counts survive this motion to dismiss.

## ORDER

Accordingly, on this second day of March, by the United States District Court for the District of Maryland, hereby ORDERED that Detective Carin's Motion to Dismiss, ECF No. 11, IS DENIED.

/S/
Paul W. Grimm
United States District Judge